**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JOHN ALEXANDER RICCARDI,<br><br>             Petitioner,<br><br>  v.<br><br>JEROME PRICE, Warden,<br><br>             Respondent. | No. CV 16-7806-AG (PLA)<br><br>**ORDER ACCEPTING FINDINGS,<br>CONCLUSIONS, AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE** |

On September 17, 2019, the United States Magistrate Judge issued a Report and Recommendation ("Report"), recommending that petitioner's Petition for Writ of Habeas Corpus be denied and that this action be dismissed with prejudice. (Docket No. 59). On October 3, 2019, respondent filed Objections to the Report. (Docket No. 60). On December 13, 2019, petitioner filed Objections to the Report. (Docket No. 65).

The Magistrate Judge's Report adequately addresses the issues raised in respondent's Objections and most of the issues raised in petitioner's Objections. A few of the issues in petitioner's Objections, however, warrant further discussion. For example, petitioner contends that the Magistrate Judge misconstrued petitioner's juror misconduct claim by stating that petitioner alleged that several of the jurors committed perjury in response to voir dire questions. (Docket No. 65 at 11, 26). According to petitioner, he alleged only that the jurors committed "sins of omission"

1  by failing to reveal relevant information that may have shown bias on their part. (Id.). But
2  regardless of whether petitioner accused the jurors of committing perjury or committing "sins of
3  omission," the result is the same. Indeed, as explained in the Report, even if the jurors had
4  revealed the information cited by petitioner, there was no basis to challenge any of the jurors for
5  actual cause. (See Docket No. 59 at 74). And, as explained in the Report, petitioner has by no
6  means shown that three of the four challenged jurors omitted any information in their voir dire
7  responses. (See id. at 73).

8  Moreover, petitioner's reliance on Porter v. Zook, 898 F.3d 408 (9th Cir. 2018), for the
9  proposition that he is entitled to an evidentiary hearing regarding his juror misconduct claim is
10 misplaced. In Porter, the Ninth Circuit addressed a case where the state court had not addressed
11 the petitioner's juror bias claim on the merits, but did address a related ineffective assistance of
12 counsel claim. Porter, 898 F.3d at 423-25. On federal habeas review, the district court concluded
13 that the state court effectively had adjudicated the juror bias claim on its merits by adjudicating the
14 related ineffective assistance of counsel claim. Id. Accordingly, the district court applied AEDPA
15 deference to the state court's decision in relation to the actual bias claim and rejected the claim
16 without conducting an evidentiary hearing or allowing discovery. Id. On appeal, the Ninth Circuit
17 held that the district court erred. Id. at 425. Here, by contrast, the California Supreme Court
18 adjudicated petitioner's juror misconduct claim on its merits.

19 What is more, the purported evidence of bias in petitioner's case does not approximate that
20 at issue in Porter. In Porter, the Ninth Circuit explained that a juror's withholding of the fact that
21 his brother was a law enforcement officer in a neighboring town could establish actual bias on the
22 juror's part where the defendant's victim was a law enforcement officer and where the juror in
23 question testified that he found the officer's testimony "'moving' and 'very emotional' because of
24 the fact that [the juror] had a brother who worked in law enforcement." Porter, 898 F.3d at 426
25 (emphasis in original). Here, by contrast, petitioner, at most, has shown only that one juror, Juror
26 D.F., neglected to disclose that, as a child, he (and possibly his mother) had been the victim of
27 domestic violence at the hands of his father. But, as noted in the Report, petitioner's case was
28 not a domestic violence case: it was a premeditated murder case. (See Docket No. 59 at 74).

Although Juror D.F. declared that, due to his experiences, he did not believe that "childhood stuff" is mitigating (Docket No. 48-57 at 2), he did so only in relation to the penalty phase of petitioner's trial, not the guilt phase. (See id.). Regardless, as explained in the Report, Juror D.F.'s declaration is inadmissible to the extent it is offered to impeach the jury's verdict, which, with respect to the penalty phase, was reversed. (Docket No. 59 at 71 n.41).

Petitioner also faults the Magistrate Judge for mistakenly stating that the body of Sue Jory, one of the petitioner's two victims, was dragged between the downstairs and upstairs of Connie's home, when, according to petitioner, Sue's body was dragged only from one bedroom to another bedroom on the same floor of Connie's home. According to petitioner, "the mis-description of [this] evidence would affect the Report's assessment of the possible source of the hairs clutched in [Sue's] hand and of the need for DNA testing." (Docket No. 65 at 12). However, whether Sue's body was dragged between floors or between rooms on the same floor does not impact the Report's analysis. Put simply, evidence showed that Sue's body was dragged, and the hair found on her hand could have been picked up during that process. Indeed, as noted in the Report, petitioner's own expert testified to that fact. (Docket No. 59 at 55). Thus, it is inconsequential whether Sue's body was dragged from downstairs to upstairs or simply between rooms on the same floor.

Next, petitioner contends that the Magistrate Judge erroneously asserted that petitioner had failed to identify any witnesses who were willing to testify about petitioner's purported obsession with neatness. (Docket No. 65 at 29). According to petitioner, evidence on this point would have explained why his fingerprints were found on Connie's linen closet -- the same place where Connie's dead body was found. (See Docket No. 1 at 99). Petitioner asserts that his cousin, Mario Ragonesi (who testified at petitioner's trial), submitted a declaration in connection with one of petitioner's state habeas petitions in which Ragonesi declared that he could have and would have testified that petitioner was obsessively neat and organized. (Id.). However, at no point prior to filing his Objections did petitioner identify Mario Ragonesi as someone who could have testified about petitioner's purported obsession with neatness. Putting that aside, the only "evidence" petitioner cites in support of this new argument is a declaration that petitioner did not lodge with

3

the Court at any point before the Magistrate Judge issued his Report. Indeed, petitioner himself acknowledged in his Traverse that the declaration had not been lodged with the Court. (See Docket No. 57-2 at 82 n.16). Although petitioner faults respondent for failing to lodge the declaration, petitioner was free to do so on his own. And even though in his Objections petitioner relies on Ragonesi's declaration, petitioner still has not lodged the declaration with the Court. In any event, as explained in the Report, "there is no reasonable likelihood that the jury would have discounted the fingerprint evidence recovered from the linen closet simply because petitioner's family members testified that he tended to be a neat person." (Docket No. 59 at 85).

Finally, petitioner contends that the Report improperly "discounts mental health evidence specifically linking obsessive characteristics, such as neatness, to a history of trauma." (Docket No. 65 at 28). In support of this contention, he cites to the declaration of Jay M. Jackman, M.D. (See id. (citing Docket No. 48-58)). Dr. Jackman's declaration -- which is discussed at length in the Report (see Docket No. 59 at 99-103) -- mentions "obsessive features" tied to petitioner's childhood trauma. (See Docket No. 48-58 at 5). However, Dr. Jackman never identifies petitioner's purported obsession with neatness as among those "obsessive features." Regardless, even if Dr. Jackman had identified petitioner's supposed obsession with neatness as one of petitioner's "obsessive features" stemming from his childhood trauma, there is no reason to believe that his testimony on that point would have led the jury to discount the fingerprint evidence tying petitioner to Connie's body. This is all the more true considering the overwhelming evidence of petitioner's guilt. (See, e.g., Docket No. 59 at 25-27).

/
/
/
/
/
/
/
/

## CONCLUSION

Based on the foregoing and pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the other records on file herein, the Magistrate Judge's Report and Recommendation, and the parties' objections to the Report and Recommendation. The Court has engaged in a de novo review of those portions of the Report and Recommendation to which objections have been made. The Court concurs with and accepts the findings and conclusions of the Magistrate Judge, with the following modifications, see 28 U.S.C. § 636(b)(1)(C), which are not material to the Court's decision:

- At page 26, line 5, strike "truck" and replace with "trunk."
- At page 55, lines 6-7, strike "Notably, evidence was adduced to show that Sue's body was dragged between the downstairs and upstairs of Connie's home" and replace with "Notably, evidence was adduced to show that Sue's body was dragged between two bedrooms on the same floor of Connie's home."

ACCORDINGLY, IT IS ORDERED:

1. The Report and Recommendation is accepted.
2. Judgment shall be entered consistent with this Order.
3. The clerk shall serve this Order and the Judgment on all counsel or parties of record.

DATED: January 31, 2020

HONORABLE ANDREW J. GUILFORD
SENIOR UNITED STATES DISTRICT JUDGE